**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2531-20

BRIDGETT KNIGHT,

     Plaintiff-Appellant,

v.

FAMILY DOLLAR STORES,
INC.,[1] JOSEPH BRACHE, and
RSK & SONS TRANSPORT,

     Defendants-Respondents.

_____

Submitted August 2, 2022 – Decided August 31, 2022

Before Judges Geiger and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5337-19.

Lord, Kobrin, Alvarez & Fattell, LLC, attorneys for appellant (Paula C. Nunes and Robert A. Lord, on the briefs).

---

[1] Improperly pled as "Family Dollar."

Sweeney & Sheehan, PC, attorneys for respondent Family Dollar Stores, Inc. (Neal A. Thakkar, on the brief).

PER CURIAM

In this personal injury matter, plaintiff Bridgett Knight alleged she injured her right ankle and left knee when she slipped and fell on a clear, odorless substance on the floor near the exit door of defendant Family Dollar Stores, Inc.'s store in Edison. Plaintiff claimed the liquid emanated from a bottled beverage located in a self-service refrigerator next to the cash register and, as such, defendant should have known liquid could spill in the area where she fell. After the close of discovery for fact witnesses, she sought to depose the store's former manager. Plaintiff now appeals from an April 1, 2021 Law Division order, denying reconsideration of February 19, 2021 orders that dismissed on summary judgment her negligence complaint against defendant, and denied her motion to extend discovery as moot.[2] We affirm.

---

[2] Plaintiff's complaint also asserted unrelated claims against defendants Joseph Brache and RSK & Sons Transport, stemming from a prior motor vehicle accident. Before the return date for the present motions, plaintiff settled her claims with both defendants; they are not participating in this appeal.

I.

We summarize the facts from the motion record in a light most favorable to plaintiff as the non-moving party.  R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  Just before noon on July 28, 2017, plaintiff purchased goods at the cash register located near the exit of defendant's store.  While walking toward the exit, plaintiff slipped and fell as she approached a black mat that abutted the store's exit.  Although she did not see the substance on the floor before she fell, plaintiff thereafter noticed liquid on the bottom of her left flip-flop, the top of her foot, and her leg.  It was not raining on the day of the incident.

When deposed, plaintiff identified an undated photograph depicting the area of the fall.  In her certification in opposition to defendant's summary judgment motion, plaintiff claimed she "slipped on water that was spilled and formed into a puddle within the store, between the cash register and the exit door."  Plaintiff's counsel annexed to his certification undated photographs that "show a refrigerator with self-serve single water bottles immediately next to the cash register."

A-2531-20

At some point, plaintiff obtained the undated incident report of the store's manager, Anthony Vallie.[3]  Vallie was behind the register at the time of plaintiff's fall and went to her aid.  The short narrative states plaintiff "slipped on some sort of liquid that was on the floor."  Plaintiff told Vallie she was "fin[e]" and "just needed some time."  She left the store ten minutes later.  Two days after the incident, plaintiff sought medical attention for her injuries.  She thereafter underwent treatment that included arthroscopic debridement of her right ankle and left knee.

Nearly two years after the accident, on July 18, 2019, plaintiff filed her complaint against defendant, which filed a timely answer on August 9, 2019 pursuant to Rule 4:6-1(a).  Assigned to Track 2, the case was subject to a 300-day discovery period, R. 4:24-1(a), with an initial discovery end date of June 4, 2020.

Plaintiff's complaint also demanded defendant answer "Uniform Interrogatories Form C and C-1."  On a date that is not provided in the record, defendant provided answers to both sets of interrogatories.  In four of its answers to Form C interrogatories, defendant referenced Vallie.  As one notable example,

---

[3]  During her deposition, plaintiff could not recall when she got the report, stating:  "I may have had to come back and pick it up[,] . . . but I know we did take [sic] an incident report there."

defendant identified Vallie as someone "who did not witness the incident but assisted . . . plaintiff shortly after the fall occurred." Defendant annexed Vallie's incident report to its answers.

Discovery was extended once by stipulation, followed by two unopposed defense extension motions. R. 4:24-1(c). On October 30, 2020, the civil presiding judge entered the third and final order extending the discovery end date to January 30, 2021. Pertinent to this appeal, the order provided a December 31, 2020 completion date for party and fact witness depositions.

On January 21, 2021, plaintiff noticed Vallie's deposition for January 28, 2021.[4] The following day, plaintiff requested defendant's consent to extend discovery. Later that day, defense counsel advised his client refused to consent to an extension but would attempt to determine whether "Vallie [wa]s still employed there and if he [wa]s available for his deposition on the 28th." Defendant also filed a motion for summary judgment on January 22, 2021.

On January 25, 2021, plaintiff filed a motion to extend discovery "for the sole purpose" of deposing Vallie and adjourning the February 9, 2021 arbitration date. Plaintiff's notice of motion did not address the March 29, 2021 trial date.

---

[4] Although Rule 4:14-2(a) requires ten days' notice to all parties, defendant did not object to Vallie's deposition notice on this ground.

On January 27, 2021, defense counsel advised plaintiff that Vallie had not been employed by the company since 2019. Defense counsel further stated he had advised his client to obtain Vallie's last known contact information, but plaintiff should not expect the deposition to occur the following day.

Both motions were returnable and heard on February 19, 2021, after the conclusion of the January 30, 2021 discovery end date. Immediately following argument, the judge issued an oral decision, granting defendant's summary judgment motion and dismissing plaintiff's complaint with prejudice. The judge found plaintiff failed to "elicit[] any facts that could support a finding that defendant had actual or constructive notice of a dangerous condition or whether a dangerous [condition] existed." The judge further found the "mode-of-operation" theory of negligence was inapplicable to the present matter "under the facts that have been developed through discovery in this case." The judge entered an accompanying order that same day.

In view of his decision dismissing plaintiff's complaint on summary judgment, the judge entered a separate order on February 19, 2021, denying as moot plaintiff's motion to extend discovery. The order further stated plaintiff's motion was filed out of time because the October 30, 2020 discovery extension order required depositions of all parties and witnesses be completed by

6

December 31, 2020.  See R. 4:24-1(c) (requiring a motion to extend discovery to be made "returnable prior to the conclusion of the applicable discovery period").

At some point thereafter, plaintiff located Vallie.  On March 11, 2021, plaintiff moved for reconsideration, based on Vallie's March 10, 2021 affidavit, which contained fill-in-the-blank sections, as follows:

> 1.   I worked for Family Dollar located at 2303 Woodbridge Avenue in Edison from ___ to 2019.
>
> 2.  As per my incident report attached and marked[,] I was working in my capacity as Store Manager on July 28, 2017, when at around 11:57 a[.]m[.,] Bridget[t] Knight slipped and fell on liquid that was on the floor.
>
> 3. The area where Ms. Knight fell was between the cash register and the exit door.
>
> 4.  A self-serve cold refrigerator is located next to the checkout area as shown in picture number 1 attached hereto that I have marked.
>
> 5.  During my 5 yr month/years of employment at the store, customers have bought cold beverages and opened them at the register or prior to leaving the store on few/numerous/many occasions (circle one).
>
> 6.  On occasion some customers did spill some of those beverages before leaving the store.
>
> 7.   I also have witnessed numerous slip and f[a]ll incidents in the same area.

7

On April 1, 2021, the judge denied plaintiff's opposed motion on the papers. Citing D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990), the judge found plaintiff's submission failed to demonstrate "there were facts overlooked or that the court erred." This appeal followed.[5]

Before us, plaintiff initially contends the judge should have granted reconsideration because Vallie's affidavit contained "new information" "concerning the access customers had to beverage bottles, the immediate opening and consumption of same leading to spills and slip and fall incidents." She claims her motion to extend discovery should have been granted in the interests of justice. Plaintiff further contends the application of the mode-of-operation rule relieved her of the burden of proving defendant's actual or constructive notice of the condition. She argues a genuine dispute of material facts exists as to whether slip and fall accidents often occurred where she fell because of spills from bottles purchased from defendant's self-service refrigerator display.

---

[5] Prior to filing its responding brief, defendant moved for a temporary remand for the motion judge "to provide findings of fact and conclusions of law relating to the April 1, 2021 order under review." We denied the motion, stating: "The judge's order is a statement of reasons and conclusion. R. 1:7-4(a). If the merits panel decides otherwise, it may appropriately address the issue at that time." Because the parties have not raised this issue further on this appeal, we discern no reason to disturb our earlier decision.

A-2531-20

II.

As a preliminary matter, we address defendant's procedural contention that because plaintiff's notice of appeal and case information statement only reference the April 1, 2021 order denying reconsideration, we should refuse to review the February 19, 2021 summary judgment and discovery extension orders. Defendant's argument implicates Rule 2:5-1(e).

Rule 2:5-1(e)(3)(i) provides: "In civil actions the notice of appeal . . . shall designate the judgment, decision, action or rule, or part thereof appealed from . . . ." Pertinent to this appeal, the comment to the Rule informs, when the notice of appeal "designates only the order entered on a motion for reconsideration, it is only that proceeding and not the order that generated the reconsideration motion that is reviewed." Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1 on R. 2:5-1 (2022). We have therefore declined to reach the merits of an appeal when the notice of appeal failed to designate the summary judgment order. See, e.g., W.H. Industries, Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 458-59 (App. Div. 2008); Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 461-62 (App. Div. 2002).

However, in Kornbleuth v. Westover, 241 N.J. 289, 299 (2020), the Supreme Court affirmed our decision to "generously" consider the plaintiffs'

challenges to the trial court's summary judgment and reconsideration orders even though the notice of appeal only identified the order denying the plaintiffs' reconsideration motion. Moreover, the comments to the <u>Rule</u> further state: "Inasmuch as the case information statement must be filed with the notice of appeal, failure to identify an issue in the notice of appeal may be saved by identification in the case information statement filed with the notice of appeal." Pressler & Verniero, cmt. 5.1 on <u>R.</u> 2:5-1; <u>see also</u> <u>Synnex Corp. v. ADT Sec. Servs., Inc.</u>, 394 N.J. Super. 577, 588 (App. Div. 2007) (reviewing a reconsideration order that was identified in the case information statement but not the notice of appeal).

Here, unlike <u>Synnex Corp.</u>, the February 19, 2021 orders were not expressly identified in plaintiff's notice of appeal or case information statement. Although we have in the past declined to review appeals in their entirety because of this type of record deficiency and rule violation, we have elected to treat this matter indulgently notwithstanding plaintiff's noncompliance. Notably, plaintiff's case information statement sets forth all arguments raised in her brief, including those challenging the judge's decision on summary judgment. Further, plaintiff has provided the transcript of the summary judgment hearing.

## III.

Turning to plaintiff's substantive claims, we first address, as did plaintiff, her motion for reconsideration. We review a trial court's order on reconsideration against an abuse of discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

A party may move for reconsideration of a court's decision pursuant to Rule 4:49-2, on the grounds that (1) the court based its decision on "a palpably incorrect or irrational basis," (2) the court either failed to consider or "appreciate the significance of probative, competent evidence," or (3) the moving party is presenting "new or additional information . . . which it could not have provided on the first application." D'Atria, 242 N.J. Super. at 401; see also Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996).

The moving party "must initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." D'Atria, 242 N.J. Super. at 401. A motion for reconsideration is not an opportunity to "expand the record and reargue a motion." Cap. Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). Rather, it "is designed to seek review of an order based on the evidence before the court on the initial motion, not to serve as a

vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Ibid. (citation omitted).

In the present matter, plaintiff's belated production of Vallie's affidavit was an attempt to expand the record and reargue the original motion. The record does not reveal why plaintiff could not have produced the affidavit or deposed Vallie within the discovery period. Plaintiff was aware of Vallie's identity upon her receipt of his incident report during the discovery period. Although as we noted above, plaintiff could not recall when she obtained the report, at the very latest, it was provided with defendant's answers to Form C interrogatories. Plaintiff has offered no explanation as to why she could not have obtained Vallie's statement prior to the expiration of the 540-day discovery period. Vallie's statement was not new evidence as his identity was known during that extended period. See Kornbleuth, 241 N.J. at 308. We therefore conclude the motion judge did not abuse his discretion by denying plaintiff's motion for reconsideration of the summary judgment motion.

Nor are we persuaded that the judge should have reconsidered the order denying plaintiff's motion to extend discovery. Plaintiff generally argues the motion judge should have granted her reconsideration motion in the "interests

of justice" in view of the unusual circumstances occasioned by the COVID-19 pandemic. Again, we disagree.

Commencing with its March 27, 2020 order, our Supreme Court extended discovery deadlines in civil matters through and including May 28, 2020. COVID-19 Coronavirus–Supreme Court's March 27, 2020 Omnibus Order Continuing the Suspension of Court Proceedings and Extending Deadlines and Timeframes through April 26, 2020 ¶ 3 (Mar. 27, 2020); COVID-19–Second Omnibus Order on Court Operations and Legal Practice ¶ 3 (Apr. 24, 2020); COVID-19–Third Omnibus Order on Court Operations and Legal Practice ¶ 3 (May 28, 2020). The Court's subsequent omnibus orders entered on June 11, June 25, July 9, July 24, and September 17, 2020 did not further extend discovery end dates in civil cases.

Here, plaintiff did not file her motion to extend discovery until January 25, 2021, nearly eight months after the Court's third omnibus order was entered. Nor does the record contain any sworn statement that the circumstances of the pandemic prevented plaintiff from noticing Vallie's deposition within the 540-day discovery period and before the December 31, 2020 deadline for deposing fact witnesses. The only certifications of plaintiff and her attorney in the record, which were made in opposition to defendant's summary judgment motion, make

no mention of the pandemic. Moreover, recognizing the present discovery order "was entered during the period regarding the COVID situation," the motion judge rhetorically asked why "COVID [would] be an excuse" for failing to comply with the discovery order that was entered during the pendency of the Court's omnibus COVID orders. Based on the lack of evidence in the record convincing us otherwise, we discern no reason to disturb that decision.

We therefore turn to the Rule governing discovery extensions. In the absence of the opposing party's consent to extend discovery under Rule 4:24-1(c), a trial court may grant the requesting party's motion on the demonstration of "good cause," unless "an arbitration or trial date is fixed," which triggers the demonstration of "exceptional circumstances." As we have recently held, however: "[W]hen the court chooses to send out arbitration and trial notices during the discovery period, judges evaluating a timely motion to extend discovery may not utilize the 'exceptional circumstances' standard, but rather the judge 'shall enter an order extending discovery' upon a showing of 'good cause.'" Hollywood Café Diner, Inc. v. Jaffee, ___ N.J. Super. ___, ___ (App. Div. 2022) (slip op. at 13) (quoting R. 4:21-1(c)). Construing the Rule, we stated our interpretation was "consonant with its plain language and gives meaning to all its terms, is consistent with the purposes of other rules designed to set realistic

14

trial dates, and favors the general policy of adjudicating litigation on its merits."
Ibid.

In the present case, plaintiff did not notice Vallie's deposition until January 21, 2021, and did not move to extend discovery until January 25, 2021 – nearly one month after the December 31, 2020 deadline for deposition of fact witnesses. While we recognize plaintiff's motion was filed before the January 30, 2021 discovery end date, plaintiff was aware of Vallie's identity upon her receipt of his incident report, which was personally obtained by her and provided to her with defendant's interrogatory responses, within the discovery period. Thus, we conclude plaintiff failed to meet the "good cause" standard enunciated in Hollywood Café.

IV.

Nor are we persuaded by plaintiff's overlapping arguments that the motion judge erroneously dismissed her complaint on summary judgment. Plaintiff contends the mode-of-operation rule applies to defendant's single-serve beverage refrigerator located in the checkout area. She also asserts the refrigerator display constitutes a self-serve mode-of-operation because patrons are permitted to take the beverages from the display "for immediate consumption." Plaintiff argues Vallie's affidavit demonstrates defendant had

15

prior notice that other patrons slipped and fell in the same area after purchasing and opening self-serve beverages between the cash register and exit. Plaintiff's contentions are unavailing.

We review the trial court's decision on summary judgment de novo, applying the same standard used by the trial court. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). We must determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540; see also Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014). We owe no deference to the trial court's legal analysis. Palisades At Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

To sustain a negligence claim, a plaintiff must demonstrate: (1) a duty of care, (2) that the duty has been breached, (3) proximate causation, and (4) injury. Townsend v. Pierre, 221 N.J. 36, 51 (2015). The plaintiff bears the burden of proving negligence, see Reichert v. Vegholm, 366 N.J. Super. 209, 213 (App. Div. 2004), and "must prove that unreasonable acts or omissions by the defendant proximately caused his or her injuries," Underhill v. Borough of Caldwell, 463 N.J. Super. 548, 554 (App. Div. 2020).

A-2531-20

The required elements of a negligence claim in the context of a business invitee's slip and fall at a defendant's premises are well established. A plaintiff must prove by a preponderance of the evidence: (1) defendant's actual or constructive notice of a dangerous condition; (2) lack of reasonable care by defendant; (3) proximate causation of plaintiff's injury; and (4) damages. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993); see also Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 257 (2015); Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003).

When the mode-of-operation doctrine applies, a plaintiff is relieved of demonstrating the defendant's actual or constructive notice of a dangerous condition on its premises. See Model Jury Charges (Civil), 5.20F-11, "Mode of Operation Rule" (approved Mar. 2000, modified Apr. 2016). The doctrine applies when a "dangerous condition is likely to occur as the result of the nature of the [defendant's] business, the property's condition, or a demonstrable pattern of conduct or incidents." Nisivoccia, 175 N.J. at 563. More particularly, when the defendant's business has a "self-service method of operation," the defendant is required to anticipate debris falling on the ground resulting from "the carelessness of either customers or employees." Id. at 564.

In the present matter, defendant permitted its customers to help themselves to beverages contained in a refrigerator display. Accordingly, defendant's business meets the definition of self-service. See Prioleau, 223 N.J. at 262 (limiting the mode-of-operation rule to "the self-service setting, in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk"). However,

> the rule applies only to accidents occurring in areas affected by the business's self-service operations, which may extend beyond the produce aisle of supermarkets and other facilities traditionally associated with self-service activities. The dispositive factor is not the label given to a particular location, but whether there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred.
>
> [Id. at 262 (emphasis added) (citations omitted).]

Plaintiff contends that applying summary judgment standards, reasonable inferences from the motion record evidence demonstrated such a nexus. After the briefs were filed, defendant filed a supplemental brief, pursuant to Rule 2:6-11(d), citing the Supreme Court's decision in Jeter v. Sam's Club, 250 N.J. 240, 244 (2022). Defendant argues "Jeter's holding forecloses the possibility that a merchant can be subject to a mode of operation[] charge where it sells only

sealed merchandise and does not actively encourage customers to open products in the store." Further, "[m]ere knowledge that customers occasionally open and spill products sold in sealed containers is not enough to support a mode of operation[] charge."

In Jeter, the plaintiff slipped and fell on loose grapes, sustaining bodily injury. Id. at 244-45. The Court expressed "[s]elling grapes in this manner does not create a reasonably foreseeable risk that grapes will fall to the ground in the process of ordinary customer handling." Id. at 244. The Court distinguished the facts in Jeter from other decisions where it found the mode-of-operation rule applied:

> Unlike the facts of Bozza,[6] where customers were permitted to carry food and beverage items without lids, tops, or trays around a self-service cafeteria, 42 N.J. at 358, or Nisivoccia, where customers handled grapes packaged in open-top, vented plastic bags, "a dangerous condition for an unsuspecting customer walking in that area," 175 N.J. at 565, customers at Sam's Club were not intended to handle the grapes or package the grapes themselves. They were intended only to handle the closed grape containers.
>
> [Id. at 256 (emphasis added).]

---

[6] Bozza v. Vornado, Inc., 42 N.J. 355 (1964).

The Court affirmed our decision, which found the plaintiff had satisfied two of the three elements of the mode-of-operation rule: "[I]t was 'undisputed that [the] defendant operated a self-service business' and the location of [the] plaintiff's fall bore a relationship to the self-service component of the store." Id. at 248. Similar to our decision, however, the Court concluded the plaintiff failed to demonstrate a nexus between her "fall on grapes and Sam's Club's self-service sale of grape containers." Id. at 257. The Court reasoned: "Customers and Sam's Club employees were not intended to handle the grapes, and the grapes were packaged and sold in sealed clamshell containers secured by tape – a method that posed virtually no chance of spillage during ordinary, permissible customer handling." Ibid.

Notably, the Court found "unpersuasive [the] plaintiff's argument that Sam's Club knew its customers occasionally opened the grape containers in store." Ibid. The Court reasoned "Sam's Club sold grapes in secure packaging that posed no foreseeable risk that grapes would end up on the floor." Ibid. The Court also cited the testimony of the defendant's assistant store manager "that Sam's Club did not permit customers to open the containers in store, and that doing so was tampering with the product." Ibid.; see also Ryder v. Ocean Cnty. Mall, 340 N.J. Super. 504, 507-09 (App. Div. 2001) (finding a nexus between

20

the plaintiff's fall on liquid from an "Orange Julius" drink and the defendant mall because "[t]here was evidence that the Mall [did] not restrict the carrying of, or consumption of, food and drink anywhere in the common areas" thus becoming the "functional equivalent of a cafeteria").

Not unlike the closed clamshell containers in Jeter, the beverages contained in the refrigerator display in the present case were sealed and sold in a manner providing "virtually no chance of spillage during ordinary, permissible customer handling." 250 N.J. at 257. There was no evidence supporting an inference that any of the bottles in the refrigerator were opened and spilled by another customer prior to plaintiff's fall. Nor did the record on summary judgment contain any evidence that defendant's business practice permitted its sealed self-serve beverages to be opened and consumed on the premises. See id. at 256. Thus, plaintiff failed to provide the necessary "nexus between the dangerous condition and defendant's mode of operation." Ibid.

Even if plaintiff had timely provided Vallie's affidavit, we are not persuaded his statement supported defendant's "practice" of permitting its customers to open and consume beverages in the store, as plaintiff argues. Vallie stated only that "[o]n occasion some customers did spill some of those beverages before leaving the store." But Vallie failed to indicate how often he

had seen patrons open the beverages at the register, or whether the slip and fall accidents he witnessed "in the same area" where plaintiff fell were attributable to the self-serve beverages opened at the counter. Notably, Vallie did not state defendant regularly permitted the beverages to be opened and consumed in the store. Thus, there is no evidence in the record that defendant permitted the beverages to be opened and consumed on the premises as a part of its business operation. See Ryder, 340 N.J. Super. at 507-09.

Because the mode-of-operation rule did not apply in this case, plaintiff must satisfy her burden of proof under traditional negligence principles. Relying on Vallie's affidavit, plaintiff contends defendant had prior notice of the dangerous condition.

To establish a claim for premises liability, the plaintiff must show "the defendant had actual or constructive notice of the dangerous condition." Nisivoccia, 175 N.J. at 563. Actual notice refers to "notice given directly to, or received personally by, a party." Black's Law Dictionary 1277 (11th ed. 2019). A defendant has constructive knowledge "when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting

22

Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)).

Affording plaintiff all favorable inferences and presuming the presence of the liquid on defendant's floor, the record is devoid of any evidence establishing the source of the substance or how long it was present before plaintiff's fall. No photographs or video footage depicted the substance on the date of the incident. Referencing his incident report, Vallie's affidavit only claims plaintiff slipped on a liquid on the floor, but he did not indicate defendant was on notice of any spilled liquid near the store's exit before plaintiff's fall.

To the extent not specifically addressed, plaintiff's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2531-20